IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Douglas Keith Hamnes, | ) |
| | ) **ORDER DENYING PLAINTIFF'S** |
| Plaintiff, | ) **MOTION FOR SUMMARY** |
| | ) **JUDGMENT, GRANTING** |
| v. | ) **COMMISSIONER'S MOTION FOR** |
| | ) **SUMMARY JUDGMENT, AND** |
| Kilolo Kijakazi, Commissioner of the | ) **AFFIRMING COMMISSIONER'S** |
| Social Security Administration, | ) **DECISION** |
| | ) |
| | ) Case No.: 1:21-cv-00060 |
| Defendant. | ) |

The plaintiff, Douglas Keith Hamnes ("Hamnes or "claimant"), seeks judicial review of defendant Kilolo Kijakazi's, Commissioner of the Social Security Administration ("Commissioner"), denial of his application for Disability Insurance Benefits ("DIB") under Title II. This court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Before the court are competing motions for summary judgment filed by Hamnes and the Commissioner. (Doc. Nos. 13, 15).

I. BACKGROUND

Hamnes filed an application for disability benefits on April 11, 2019, alleging an onset disability date of January 1, 2010. (Doc. No. 11-5 at 9). On June 17, 2019, Hamnes' application was denied, and he completed a request for reconsideration. (Doc. No. 11-4 at 3-5, 8). On September 25, 2019, the request for reconsideration was denied. (*Id.* at 9-14). Hamnes subsequently requested a hearing before an Administrative Law Judge. (*Id.* at 15-16). A hearing was held on June 17, 2020, before Administrative Law Judge ("ALJ") Christel Ambuehl. (Doc. No. 11-2 at 32). Attorney Paul Temanson represented Hamnes at the hearing. (*Id.*). Vocational expert David Perry also appeared telephonically. (*Id.*). At the hearing Hamnes amended the alleged

onset disability date to June 30, 2013, the year he turned fifty-five. (*Id.* at 35). He also noted a date last insured of 2014. (*Id.*). On July 21, 2020, the ALJ issued a decision finding Hamnes not disabled through June 30, 2014, the date last insured. (*Id.* at 24).

Hamnes requested review by the Appeals Council on September 3, 2020. (Doc. No. 11-4 at 79). On January 14, 2021, the Appeals Council denied Hamnes request for review, making the ALJ's decision the final decision of the Commissioner. (Doc. No. 11-2 at 2-7).

At the time of the amended onset date, Hamnes was fifty-five years old. (Doc. No. 11-2 at 35). Hamnes completed his high school education and went to trade school where he obtained a degree. (*Id.* at 36-37). He has primarily worked as an electrician. (*Id.* at 35).

## II.   LEGAL STANDARD

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*Id.* § 423(d)(2)(A).

In determining whether an individual has a disability under the Social Security Act, the Commissioner follows a five-step sequential evaluation process. *See* C.F.R. § 404.1520(a). Under the first step, the Commissioner must consider a claimant's work activity. 20 C.F.R. §

2

404.1520(A)(4)(i). An individual is not disabled if they have engaged in substantial gainful activity. *Id.*

Second, the Commissioner "determines whether the claimant has a severe impairment that significantly limits [the claimant's] physical or mental ability to do basic work activities." *Igo v. Colvin*, 839 F.3d 724, 727-28 (8th Cir. 2016) (quoting 20 C.F.R. § 404.1520(c)) (internal quotations omitted); see 20 C.F.R. § 404.1520(a)(4)(ii). Basic work activities mean "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). Basic work activities include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 1522(b).

Third, the Commissioner considers "the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant has an impairment or combination of impairments which meet or are equal to the criteria of the listed impairments [in 20 C.F.R. pt. 404, Subpt. P, App. 1], the claimant will be presumed disabled. *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "To meet a listing, a claimant must show that he or she meets all of the criteria for the listed impairment." *Dols*, 931 F.3d at 744 (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)).

Fourth, the Commissioner considers residual functional capacity and past relevant work of the claimant. 20 C.F.R. § 404.1520(a)(4)(iv). Residual functional capacity is defined as "the most [the claimant] can still do despite [their] limitations." 20 C.F.R. § 1545(a)(1). A claimant is not

disabled if they have residual functional capacity to perform past relevant work. § 404.1520(a)(4)(iv).

Lastly, the Commissioner considers the claimant's residual functional capacity, age, education, and work experience to determine whether the claimant may make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant may do other work, they are not disabled. *Id.* To support a finding that the claimant is not disabled, there must be a demonstration of work that the claimant may do which exists in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

Upon reviewing the record, the court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for hearing. 42 U.S.C. § 405(g). To affirm, the court must find substantial evidence appearing in the record as a whole supports the Commissioner's decision. *Id.*; *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989); *Emerson v. Kijakazi*, No. 1:18-CR-146, 2022 WL 17403569, at *6 (D.N.D. Dec. 2, 2022).

"Substantial evidence is less than a preponderance of the evidence and is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016 (internal quotations omitted). "If after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)); *see Igo*, 839 F.3d at 728.

The court need consider evidence which supports the Commissioner's decision, as well as that which detracts from it. *Charette v. Saul*, No. 3:18-CV-254, 2019 WL 7605835, at *2 (D.N.D. Nov. 22, 2019); *see Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019). The court will not disturb the

ALJ's decision unless it lies outside the available "zone of choice." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citing *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)). An ALJ's decision is not outside the "zone of choice" simply because the court may have reached a different conclusion if it were the initial fact finder. *Id.*

### III.  DISCUSSION

The ALJ applied the five-step test to determine whether Hamnes was disabled. First, the ALJ found that Hamnes was not engaged in substantial activity during the amended alleged onset date, June 30, 2013, through the date last insured, June 30, 2014. (Doc. No. 11-2 at 17). Second, the ALJ concluded Hamnes had the following severe impairments: "resected osteogenic sarcoma involving the right forearm 1994, statue [sic] post pre and post adjuvant chemotherapy; resected metastic [sic] pulmonary metastasis in 2008." (*Id.*). Third, the ALJ found Hamnes did not have an impairment or combination of impairments which met or equaled the severity of the impairments within 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 19). Fourth, the ALJ determined Hamnes has the residual functional capacity to perform less than the full range of medium work as defined in 20 CFR 404.1567(c). (*Id.*). Specifically, the ALJ determined,

> [t]he claimant was limited to lifting and carrying 50 pounds occasionally and 25 pounds frequently. The claimant could stand or walk for 6 hours out of an 8-hour workday. The claimant could sit for 6 hours out of an 8-hour workday. The claimant was limited to frequent pushing and pulling with the right arm but had no limitations with the left arm. The claimant was limited to frequent reaching, handling, fingering and feeling with the right arm and no limitations with the left arm.

(*Id.*). The ALJ also concluded Hamnes was capable of performing past relevant work as an electrician. (*Id.* at 23). The ALJ did not proceed to step five, finding Hamnes was not disabled from the alleged onset date through the date last insured. (*Id.* at 24).

Hamnes now alleges that (1) the ALJ erred in the evaluation of the evidence, and (2) the ALJ erred as a matter of law. (Doc. No. 14 at 3).

### A. ALJ's Analysis of Hamnes' Subjective Complaints

Hamnes argues the ALJ failed to properly consider his subjective complaints. He contends the ALJ failed to evaluate the evidence and the decision is not supported by substantial evidence in the record as a whole.

When evaluating subjective complaints, the ALJ is required to assess the claimant's credibility in light of objective medical evidence and evidence relating to "the claimant's daily activities; the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). Each factor need not be explicitly addressed by the ALJ, rather the factors may be considered and acknowledged prior to the ALJ discounting the claimant's subjective complaints. *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009); *see also Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005). "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001); *see Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Hamnes argues that his ability to do some things and other things occasionally does not evidence his ability to perform full time work, and he is unable to perform competitive employment on a sustained basis. (Doc. No. 14 at 7). In response, the Commissioner argues that the ALJ properly evaluated the subjective complaints based on Hamnes ability to work while applying for benefits. (Doc. No. 16 at 8). The ALJ noted that Hamnes worked after the amended onset disability date of June 30, 2013. Hamnes' medical records in April of 2014 indicate that "[h]is house has

been flooded as well as his shop, he works as an electrician, because of the floods in Minot, and this has been a quite stressful year for him for that, but he is coping well he says." (Doc. No. 11-7 at 75). Hamnes also reported doing "labor-type work." (*Id.* at 74). The records likewise note Hamnes continued to work full time in October of 2014, which he disputed at the hearing, stating, "I had nothing other to say. That was what I was trying to do, I guess." (Doc. No. 11-7 at 83; Doc. No. 11-2 at 39). However, Hamnes also testified to working a few hours per week performing service calls. (Doc. No. 11-2 at 37). "Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work." *Schultz v. Astrue*, 479 F.3d 979, 982-83 (8th Cir. 2007); *see Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005); *Gowell v. Apfel*, 242 F.3d 793, 798 (8th Cir. 2011).

The ALJ also considered Hamnes' daily activities and daily living. Hamnes testified to living alone in his own home and driving a vehicle almost every day to go to the grocery store, the post office, or run errands. (Doc. No. 11-2 at 20, 36). As previously noted by the court, Hamnes also continued to work after the amended alleged onset date. During the relevant period, Hamnes also noted his overall quality of life at a 7 of 10, with a 10 being "as good as can be." (Doc. No. 11-7 at 75). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 201)) (internal quotation marks omitted); *see Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (concluding that "'daily activities [such] as getting up, eating, reading, cleaning the house, making the bed and doing the dishes with the help of [a spouse], making meals, visiting with friends, and occasionally shopping and running errands' are inconsistent with a claimant's subjective complaints of disabling pain"); *see also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010).

Hamnes has a history of resected metastatic pulmonary metastasis, for which he underwent a left thoracotomy in March of 2008. (Doc. No. 11-7 at 27-28). The ALJ noted that Hamnes continued to smoke despite his history of lung cancer. (Doc. No. 11-2 at 23). In an April 2011 follow-up visit, medical records reflect Hamnes had a 35-pack-year smoking history, and his medical provider recommended inhalers and quitting smoking to aid with his shortness of breath and probable chronic obstructive pulmonary disease (COPD) diagnosis. (Doc. No. 11-7 at 58-59.) However, Hamnes continued to smoke half a pack to one pack of cigarettes per day. (*Id.* at 69, 85). The medical records also evidence Hamnes was counseled extensively about smoking cessation and was frequently recommended to cease smoking. (*Id.* at 59, 71-72, 76). Hamnes denied interest in quitting. (*Id.* at 76; 85). The ALJ also noted imaging showed a nodule formation on Hamnes' left lung, which decreased over time. (Doc. No. 11-2 at 23). "[C]ontinued smoking amounts to a failure to follow a prescribed course of remedial treatment." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008); *see Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) ("Impairments that are controllable or amenable to treatment do not support a finding of disability, and '[f]ailure to follow a prescribed court of remedial treatment without good reason is grounds for denying an application for benefits.'").

An ALJ is in the best position to evaluate Hamnes' testimony and is granted deference in that regard. *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Thus, the court concludes the ALJ properly evaluated the *Polaski* factors, and the analysis of the subjective complaints are supported by substantial evidence in the record.

### B. Hamnes' Residual Functional Capacity

The court next considers Hamnes' residual functional capacity ("RFC"). Hamnes argues "[t]he ALJ construction and interpretation of [his] Residual Functional Capacity of a medium RFC

8

is not supported by the record." (Doc. No. 14 at 4). Hamnes also asserts that the ALJ failed to appreciate the Medical-Vocational Guidelines.

The RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A claimant's RFC is determined "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [their] limitations." *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)). The ALJ's RFC is not required to be supported by specific medical opinion, nor is the ALJ limited to considering only medical evidence. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022).

In making the RFC determination, the ALJ concluded that Hamnes was able to perform less than the full range of medium work. (Doc. No. 11-2 at 19). The ALJ determined Hamnes is limited to lifting and carrying 50 pounds occasionally and 25 pounds frequently, can stand or walk about 6 hours in an 8-hour workday and can sit for 6 hours in an 8-hour workday. The ALJ also found Hamnes is limited to frequent pushing and pulling with the right arm, but does not have limitation with the left arm, is limited to frequent reaching, handling, fingering, and feeling with the right arm and no limitation to the left arm. (*Id.*).

The ALJ addressed Hamnes' arm complaints, documenting a right radial osteogenic grade 2 sarcoma in 1994. (Doc. No. 11-2 at 20). Hamnes testified that his right arm no longer worked after a fusing surgery, which left him with no rotation in his wrist, difficulties with rotation from the shoulder and fingers, and an inability to point or use one finger on the same hand. (Doc. No. 11-2 at 20). The ALJ also found during the relevant period from the amended alleged onset date to the date last insured, the treatment notes did not document any complaints relating to the use of his right arm. (*Id.* at 21). However, the medical records indicate that on the right side, Hamnes had

"no pronation and supination and is fused in slight pronation but has good active range of motion of the elbow in flexion and extension." (Doc. No. 11-7 at 81). The heaviest weight Hamnes lifted as an electrician from 1983 to 2009 was 100 pounds or more and frequently lifted 50 pounds. (Doc. No 11-2 at 23) Hamnes testified to not being able to lift a lot more than 15 pounds without getting a Charley horse in his arm. (Doc. No. 11-2 at 52). The ALJ found Hamnes "stated during 2009, he had been able to lift up to 35 pounds." (Doc. No. 11-2 at 20). Hamnes argues this is not correct and the ALJ's decision should be reversed and remanded. The court finds that this statement was incorrect, as Hamnes testified to having another person help him lift light fixtures weighing 35 pounds. (Doc. No. 11-2 at 54.). However, it is harmless error as there is no indication the ALJ relied on this statement when determining the RFC. Rather, the ALJ acknowledged in the decision that Hamnes' testimony was not entirely consistent with the medical evidence and other evidence presented in the record on which the ALJ relied. (Doc. No. 11-2 at 20).

Hamnes argues the ALJ incorrectly described him to be ambidextrous. (Doc. No. 14 at 8). Here, the ALJ found that Hamnes reported he was right-handed, but relied significantly on his left hand for work related tasks, taking clothing out of a drawer or closet, operating buttons and zippers, brushing his teeth, and cutting food. (Doc. No. 11-2 at 50, 55-57). Hamnes also testified to using his right hand to assist the left, and to writing checks with the right hand. (*Id.* at 55). Accordingly, the ALJ did not consider him right-handed alone. (*Id.* at 22). While Hamnes argues that he is not ambidextrous, and is right hand dominant, the medical records classify Hamnes as a "left hand dominant gentleman." (Doc. No. 11-7 at 80). The record reflects Hamnes utilizes both hands for tasks, and while the ALJ may not have applied the correct choice of words to characterize Hamnes' abilities, the court cannot conclude the ALJ reached its determination in error based on the evidence presented in the record as a whole.

10

Hamnes contends that he falls under the Medical-Vocational Guidelines ("grids") at light or sedentary exertional demands. (Doc. No. 14 at 4). The grids are charts which list certain vocational profiles warranting a finding of disability or non-disability. *Philips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012); *see McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir. 2011); 20 C.F.R. Part 404, Subpt. P., App. 2. "The grids come into play at step five of the analysis, where 'the burden shifts to the Commissioner to show that the claimant has the physical residual capacity to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience.'" *Philips*, 671 F.3d at 702 (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). Where an ALJ finds a claimant capable of performing their past relevant work at step four, the ALJ is not required to apply the grids. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) ("[T]he ALJ clearly determined that [claimant] was not disabled at step four, and the Medical-Vocation Guidelines are applied only at step five. Because he determined that [claimant] was not disabled at step four, the ALJ did not need to reach step five."). Here, the ALJ concluded that Hamnes failed to show he was unable to perform his past relevant work as an electrician as performed in the national economy. Consequently, the ALJ found Plaintiff not disabled at step four of the analysis and did not proceed to step five. As such, the ALJ was not required to apply the grids. Based upon this review, the court finds the ALJ's RFC determination is supported by substantial evidence in the record.

### C. Vocational Expert Hypotheticals

Hamnes alleges that the hypotheticals presented to the vocational expert ignored the totality of his circumstances. (Doc. No. 14 at 8). He also asserts that only the medium exertional demand and frequent right arm use allowed for past relevant work. (*Id*.).

Testimony from a vocational expert constitutes substantial evidence when based on a properly phrased hypothetical question. *Roe v. Charter*, 92 F.3d 672, 675 (8th Cir. 1996); *see Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996); *cf. Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994) ("Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision."). "The hypothetical question need only include those impairments and limitations found credible by the ALJ, and the claimant bears the burden to establish that he or she cannot return to past relevant work." *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005*)* (internal citations omitted)*; see Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *see also Perkins v. Astrue*, 648 F.3d 892, 902 ("[T]he ALJ may exclude any alleged impairments that [he] has properly rejected as untrue or unsubstantiated.").

The hypothetical question was required only to include impairments accepted by the ALJ as true. The ALJ is permitted to exclude any impairments which are not found to be credible or have been rejected as untrue or unsubstantiated. The court has already found the ALJ did not err in determining Hamnes' RFC. Accordingly, the court concludes that the hypotheticals were proper in describing Hamnes' limitations.

## IV.   CONCLUSION

For the reasons articulated above, the court is satisfied that substantial evidence in the record as a whole supports the ALJ's findings and conclusion that Hamnes was not disabled from the amended alleged onset date through the date last insured. Accordingly, Hamnes' motion for summary judgment (Doc. No. 13) is **DENIED**, the Commissioner's motion for summary judgment (Doc. No. 15) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated this 26th day of August, 2024.

/s/ Clare R. Hochhalter
Clare R. Hochhalter, Magistrate Judge
United States District Court